**Case No. 11-17454**

En Banc Opinion Filed October 15, 2014
Before:  Alex Kozinski, Chief Judge, and Diarmuid F. O'Scannlain, Sidney R. Thomas, Barry G. Silverman, Susan P. Graber, Ronald M. Gould, Richard A. Paez, Marsha S. Berzon, Richard C. Tallman, Jay S. Bybee, and Milan D. Smith, Jr., Circuit Judges

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

C.B., a minor,

    **Plaintiff-Appellee,**

v.

**CITY OF SONORA; HAL PROCK; and MACE McINTOSH,**

    **Defendants-Appellants.**

DC No.
1:09-cv-00285-
AWI-SMS

Appeal from the United States District Court,
Eastern District of California, Fresno Division
Honorable OLIVER W. WANGER, Trial Judge
Honorable ANTHONY W. ISHII, Presiding

---

## DEFENDANTS-APPELLANTS' MOTION TO STAY MANDATE PENDING PETITION FOR WRIT OF CERTIORARI (FRCP 41(d)(d))

---

CORNELIUS J. CALLAHAN, Esq., SBN 202585
STEPHANIE Y. WU, Esq., SBN 298498
BORTON PETRINI, LLP
1104 12th Street
Modesto, California 95354
T:  (209) 576-1701
F:  (209) 527-9753
ccallahan@bortonpetrini.com
swu@bortonpetrini.com

*Attorneys for Defendants-Appellants*,
CITY OF SONORA; HAL PROCK; and MACE McINTOSH

# I.    INTRODUCTION

Defendants-Appellants CITY OF SONORA, MACE McINTOSH, and HAL PROCK ("Defendants") move this Court for an Order Staying the Mandate in this matter for 90 days pending their filing of a Petition for Writ of Certiorari with the United States Supreme Court.  Defendants make this motion pursuant to Federal Rule of Appellate Procedure 41(d)(2), on the grounds that (1) the Petition for Writ of Certiorari will, at the very least, present "substantial questions" relating to standards governing the Fourth Amendment and police officers' entitlement to qualified immunity, (2) there is good cause for a stay, and (3) the Petition would not be frivolous or filed for the purpose of delay.

# II.    FACTUAL BACKGROUND

This case arises out of an incident that occurred on September 29, 2008, at Sonora Elementary School, involving Sonora Police Department ("SPD") officers taking Plaintiff C.B. ("Plaintiff"), a sixth grader, into custody and handcuffing him, at school, after the school reported him as an out of control juvenile and requested the police department's assistance.

On the morning of the incident, Plaintiff was sent to the office of the school disciplinarian, Ms. Sinclair, in accordance with the 504 plan in place to accommodate his Attention Deficit Hyperactivity Disorder, because he was being defiant and refused to do any class work.  Upon being excused from Ms. Sinclair's

office, Plaintiff joined his classmates for the lunch break. Shortly thereafter, Ms. Sinclair received a report that Plaintiff was being unresponsive and would not return to class after recess. Shortly thereafter, based upon various incidents that occurred throughout the morning, Ms. Sinclair approached Plaintiff, who was sitting on a bench, in an effort to engage him and get him to go inside, but Plaintiff refused to respond. Plaintiff "reared up" to get off the bench three times, which Ms. Sinclair interpreted as him getting ready to flee, as he had done so with other school officials in the past. After repeatedly requesting Plaintiff to come into her office, and his continued unresponsiveness, Ms. Sinclair advised Plaintiff that she would need to call the police, to which Plaintiff responded: "call them."

Ms. Sinclair summoned the SPD, reporting an out of control juvenile. Ms. Sinclair called the SPD because she believed there was a risk that Plaintiff would attempt to run away from her, which was premised upon an earlier incident where Plaintiff stated he was tired of feeling the way he felt and wanted to commit suicide by running into traffic. She also knew from earlier dealings that if an adult went towards Plaintiff and got too close, he would take off running. Further, there was an open gate that exited to a main road located nearby.

At approximately 12:15 pm, the SPD received a report from the school, indicating that it needed assistance with an out of control juvenile. As such, the SPD sent out a dispatch accordingly. Officer Prock and Chief McIntosh (the

2

"Officers") responded to Sonora Elementary School. When the officers arrived, Plaintiff was still sitting on the bench.

During the course of their investigation, the Officers, having already been informed by dispatch that Plaintiff had been reported by the school as "out of control," were also warned by Ms. Sinclair, by both hand gesture and verbally, that Plaintiff was a runner and would run off campus, and that he had not taken his medications. Additionally, the Officers were informed that Plaintiff needed to be removed from campus. The Officers continued trying to engage Plaintiff in conversation for approximately 4-5 minutes, but Plaintiff refused to respond. Plaintiff admitted that he made a conscious decision not to respond to the Officers.

Based on the information provided by the school, and in light of Plaintiff's continued defiance and refusal to respond, the Officers took Plaintiff into temporary custody under Welfare & Institutions Code § 601, which allows officers to take minors into custody if the officer has reasonable cause for believing a minor is "beyond the control" of his custodian. Additionally, in light of the fact that the Officers were repeatedly warned that Plaintiff was a runner, and the nearby exit from the school to a main street, the Officers chose to handcuff Plaintiff, pursuant to the SPD's written handcuffing policy, which allow officers to handcuff minors under the age of 14, if "they are of a state of mind which suggests a reasonable probability of their desire to escape" or "injure themselves." In this

case, although it is unlikely that Plaintiff would have *successfully* escaped from the Officers, the Officers were concerned that he may *attempt* to escape, which would, in turn, require the Officers to physically stop and restrain Plaintiff, likely resulting in injury to Plaintiff.

Officer Prock asked Plaintiff to stand up and place his hands behind his back, and then loosely placed the handcuffs on Plaintiff's wrists. Since Plaintiff's parents were out of town, Officer Prock transported and released Plaintiff to his uncle, who was located five miles away in a neighboring city. Plaintiff remained handcuffed while he was transported from the school to his uncle; which, according to Plaintiff, took no more than a total of sixteen minutes.

During the entirety of this incident, the Sonora Elementary School had to completely shut down a portion of the school to prevent other students from observing the situation.

### III.  PROCEDURAL BACKGROUND

Plaintiff filed a lawsuit against Defendants, asserting state law claims of false imprisonment and intentional infliction of emotional distress (IIED), along with federal claims of excessive force and unlawful seizure against all Defendants, and a Monell claim against the City of Sonora.[1] Defendants filed a Motion for Summary Judgment premised upon qualified immunity, among other issues, which

---

[1]   The Sonora School District and Karen Sinclair were also named as defendants, but eventually settled with Plaintiff.

the District Court denied without determining whether the law was clearly established at the time of the subject incident.

The matter proceeded to trial, and the jury initially returned a unanimous verdict in favor of all Defendants on all claims. However, the Court determined that the verdict was inconsistent because the jury, as a result of an error in the Court's Special Verdict Form, had continued on and answered a question regarding damages for the IIED claim, despite finding that the Officers were entitled to the affirmative defense of privilege. As such, the District Court asked the jury to redeliberate. During the course of deliberations, the jury repeatedly expressed their confusion to the Court, as to whether it was an "inconsistency" to find that the Officers were liable *and* had established he affirmative defense of privilege. In response, the Court engaged in lengthy discourse with the jury, and in the process, provided instructions and guidance that was convoluted and misleading. In the end, the jury completely reversed their initial findings on each and every claim and returned a verdict in favor of Plaintiff.

Defendants moved for Judgment as a Matter of Law and for a New Trial and Remittitur, which were denied by the Court, again, without making any finding as to the second prong of qualified immunity.

Defendants appealed to the Ninth Circuit, and on September 12, 2013, a three-judge panel (McKeown, Watford, and Zilly) issued its opinion, unanimously

decided to remand the case for new trial due to the District Court's improper

supplemental jury instructions, and, by majority (Watford and Zilly), held that the

Officers were entitled to qualified immunity on both §1983 claims and instructed

the District court to enter judgment as a matter of law in favor of the Officers,

accordingly. Judge McKeown concurred in the majority's decision to remand the

case for new trial, but dissented from its finding that the Officers were entitled to

qualified immunity on the §1983 claims.[2]

Thereafter, the Ninth Circuit granted Plaintiff's petition for a rehearing en

banc, and on October 15, 2014, issued a divided opinion, with the majority

speaking through two judges (Paez and M. Smith), that largely reinstated the

verdict, but was split 7-4 on both issues of qualified immunity. As to those

particular issues, Judge Paez, who was joined in full by Judge Silverman, found

that the Officers were not entitled to qualified immunity on either the unlawful

seizure or excessive force claim. Judge Berzon, joined by Judge Thomas, agreed

with Judge Paez's conclusion, but arrived there via different reasoning. Judge M.

Smith, who was joined in full by Judges O'Scannlain, Tallman, and Bybee,

disagreed and found that the Officers were entitled to qualified immunity on both

the unlawful seizure or excessive force claim. Judge Gould, joined by Chief Judge

---

[2] Judge McKeown, dissenting, concluded that Welfare and Institutions Code section 601 was inapplicable, and the duration of Plaintiff's detention was unreasonably long; the issue of excessive force was not discussed.

Kozinski, and Judge Graber, joined Judge M. Smith in finding that the Officers were entitled to qualified immunity on the unlawful seizure claim, but also joined with Judge Paez in finding that the Officers were not entitled to qualified immunity on the excessive force claim; as such, Judge M. Smith's opinion, granting qualified immunity on the unlawful seizure claim, and Judge Paez's opinion, denying qualified immunity on the excessive force claim, became the opinion of the Court regarding these issues.

Defendants now seek a stay of the mandate, pending the filing of their Petition for Writ of Certiorari to the Supreme Court.[3]

## IV.   LEGAL DISCUSSION

## A.   LEGAL STANDARD

A party may move to stay the mandate pending the filing of a petition for a writ of certiorari in the Supreme Court.  Fed. R. App. P. 41(d)(2)(A).  If the stay is granted, such stay must not exceed 90 days, unless the period is extended for good cause, or unless the party who obtained the stay files a petition for the writ and the appellate court is notified of such filing; in the case of the latter, the stay continues until the Supreme Court's final disposition.  Fed. R. App. P. 41(d)(2)(B).

A party seeking to stay an appellate mandate pending the filing of a

---

[3]    On October 29, 2014, Defendants contacted Plaintiff's counsel to advise that Defendants intended to move for stay of the mandate and inquired as to whether Plaintiff would be opposing said motion.  On October 31, Plaintiff's counsel indicated that it would be opposing this motion.

certiorari petition need only show that the certiorari petition would present a substantial question, and that there is good cause for the stay. Fed. R. App. P. 41(d)(2)(A). Such a stay is merited unless the petition for certiorari would be frivolous or filed merely for delay. 9th Cir. R. 41-1.

The movant "need not demonstrate that exceptional circumstances justify a stay of mandate." Compare Bryant v. Ford Motor Co., 886 F.2d 1526, 1528-1529 (9th Cir.1989), and Campbell v. Wood, 20 F.3d 1050, 1051 (9th Cir. 1994) (agreeing that moving party need not show exceptional circumstances to justify a stay, but ultimately denying the motion, finding that exceptional circumstances, there, justified *denying* the stay), with Calderon v. Thompson, 523 U.S. 538, 550 (finding that exceptional circumstances must be shown where a party seeks to *recall* a mandate that has already issued). Indeed, a motion to stay an appellate mandate pending a certiorari petition will often be granted. United States v. Pete, 525 F.3d 844, 851 (9th Cir. 2008) (stating it "is often the case" that appellate mandates are stayed while a party seeks certiorari from the Supreme Court).

Defendants' Motion for Stay of Mandate satisfies these requirements.

## B. THE COURT SHOULD STAY THE MANDATE BECAUSE DEFENDANTS' WRIT PETITION WILL PRESENT SUBSTANTIAL QUESTIONS, THERE IS GOOD CAUSE FOR THE STAY, AND THE PETITION WILL NOT BE FRIVOLOUS.

This Circuit's opinion in this matter conflicts with the opinion of other Circuit, and the Supreme Court, and furthermore, creates new law, concerning the

framework of the qualified immunity defense. A conflict with decisions of the Supreme Court or other federal circuits is, of course, the archetypal basis for granting certiorari under Supreme Court Rule 10. Defendants' certiorari petition will raise, at minimum, the following issues:

1. The en banc Court's decision departs from substantial Supreme Court precedent governing the analysis of the second prong of qualified immunity. As Judge Milan Smith noted in his dissent, "the Court has mandated that 'courts – *and the Ninth Circuit in particular* – not define clearly established law at a high level of generality.' Despite the Court's clear instruction that we not 'define clearly established law at a high level of generality,' the majority's hurried discussion of the second prong of the qualified immunity analysis does just that. Specifically, the majority defines the relevant law as requiring the use of force to be 'carefully calibrated to respond to the particulars of a case.' But this very general statement clearly does not provide 'fair warning' to a reasonable officer that handcuffing C.B. to take him into temporary custody violates his Fourth Amendment rights." (Dkt. 65-1, at 53-54) (emphasis in original) (internal citations omitted). Further, while Judge Smith "acknowledge[d] that the Court has recognized that general standards can create a 'clearly established' right in an 'obvious case,' even 'without a body of relevant case law,'" here, he concluded that "the facts of this case, even when viewed in the light most favorable to C.B., do not come close to

constituting an 'obvious' violation of a 'clearly established' right." (Dkt. 65-1, at 54-55) (internal citations omitted). See Saucier v. Katz, 533 U.S. 194, 195 (finding that, given the lack of "any case demonstrating a clearly established rule prohibiting the officer from acting as he did," the officer was entitled to qualified immunity).

Here, the Court analyzed the second prong of qualified immunity by applying the highly generalized "tests" set forth in T.L.O. and Graham, finding that the matter was "so obvious" that it was unnecessary to cite other cases that would have provided the Officers with notice that their conduct was unlawful. For instance, the Court found that the Officers violated Plaintiff's Fourth Amendment rights when they handcuffed him, despite the fact that the law was not clearly established that their conduct was unlawful. More specifically, in cases where the Ninth Circuit has held that excessively tight handcuffing can constitute a Fourth Amendment violation, plaintiffs were either demonstrably injured by the handcuffs or their complaints about the handcuffs being too tight were ignored by the officers. See e.g., Wall v. County of Orange, 364 F.3d 1107, 1109-12 (9th Cir. 2004)(arrestee suffered nerve damage); LaLonde v. County of Riverside, 204 F.3d 947, 952, 960 (9th Cir. 2000)(arrestee complained to officer who refused to loosen handcuffs); Alexander v. Cnty of Los Angeles, 64 F.3d 1315, 1323 (9th Cir. 1995) (hand swollen and numb several months after incident and officers denied request

to loosen handcuffs); Palmer v. Sanderson, 9 F.3d 1433, 1434-36 (9th Cir.

1993)(arrestee's wrists were discolored and officer ignored his complaint). In the

present matter, the Court found that the Officers violated Plaintiff's Fourth

Amendment rights in handcuffing him, even in the absence of any demonstrable

injury or ignored complaint.

     2.    In finding that the Officers' conduct in handcuffing Plaintiff was

unreasonable under both/either T.L.O. and Graham, the en banc Court created new

Fourth Amendment law, which ignores other precedent from other circuits

indicating that handcuffing during the course of an otherwise lawful arrest

ordinarily fails to state an excessive force claim, as such conduct is standard

practice in effecting an arrest.  See e.g., Neague v. Cynkar, 258 F.3d 504, 508 (6th

Cir. 2001) ("the handcuffing of a person in the course of an otherwise lawful arrest

fails, as a matter of law, to state a claim for excessive force"); Glenn v. City of

Tyler, 242 F.3d 307 (5th Cir. 2001) (finding handcuffing person,  who was

lawfully seized, too tightly and causing wrists to swell, without more, does not

amount to excessive force); Nolin v. Isbell, 207 F.3d 1253, 1257–58 (11th

Cir.2000) (holding, as a matter of law, the amount of force used during an arrest to

handcuff a suspect was not excessive and would not defeat an officer's qualified

immunity where the resulting injury was merely bruising); Brown v. Gilmore, 278

F.3d 362, 369 (4th Cir. 2002) ("And, in all events, a standard procedure such as

handcuffing would rarely constitute excessive force where the officers were justified, as here, in effecting the underlying arrest"). In the instant matter, even though the majority of this Court found that the Officers were reasonable in their belief that it was lawful to take Plaintiff into custody at the time of the incident, the Court also found that the law clearly established that the Officers violated Plaintiff's Fourth Amendment rights by handcuffing him, without any consideration of the interrelationship between lawfully taking a person into custody and the use of handcuffs to effect such custody.

3. The Court also created new law in reaching concluding that the Officers that even if the Officers' conduct in initially handcuffing Plaintiff at school was justified under the special needs reasonableness standard set forth in *T.L.O.*, the Officers would need to establish further justification under the higher reasonableness standard set forth in *Graham*, for the continued handcuffing of Plaintiff during the five mile drive, transporting Plaintiff from school to his uncle's place of business, because they were now outside the confines of the school. (Dkt. 65-1, at 46) (noting that it "in no event, however, do we think that an officer could have reasonably believed that *T.L.O.* governed" once Plaintiff was in custody and off campus. Such holding has significant implications for all future cases involving a police officer's use of force in a school setting; specifically, in relation to the evolving nature of the justification required and Fourth Amendment

12

standards applicable during the course of such interaction.

4.    Due to the continued confusion and lack of clarity surrounding the issue as to which reasonableness standard – *i.e.*, *T.L.O.* or *Graham* – governs an officer's use of force in a school setting, particularly in light of the Supreme Court's ruling in *Greene v. Camreta*, which vacated the Ninth Circuit's finding that the officer's conduct violated the plaintiff's Fourth Amendment rights, the Supreme Court will likely have an interest in settling this issue.[4]  See <u>Safford Unified School Dist. No. 1 v. Redding</u> (2009) 557 U.S. 364, 378  (observing that *T.L.O.* makes it impossible to establish clearly the contours of a Fourth Amendment right in the wide variety of possible school settings different from that involved in *T.L.O.* itself).

5.    The Court also held that even if California law – *i.e.,* Welfare and Institutions Code sections 601 and 625, and Penal code 835 permitted the level of force used in this instance – such law "would have no bearing on whether the officers violated clearly established federal law."[5]  (Dkt. 65-1, at 48.)   However, this finding contradicts this Court's own precedent, which indicates that state law

---

[4]    Judge Paez's opinion acknowledges that the Supreme Court vacated this Court's holding in *Greene v. Camreta*, but also noted that the Supreme Court did not disapprove this Court's reasoning, thereby implying that such reasoning should still be relied upon by officers and can still constitute precedent in this circuit.  (Dkt. 65-1, fn 14.)  In this regard, the Supreme Court may also have an interest in clarifying the effect of vacating a circuit court's holding, without expressly criticizing or otherwise overturning the circuit court's reasoning.

[5]    The Court summarily concludes that such law does not permit the level of force used in this case, but cites no authority to support such conclusion.

requirements are relevant in assessing the reasonableness of an arrest.  See Wall v. Cnty. of Orange, 364 F.3d 1107, 1111 (9th Cir. 2004); see also, Grossman v. City of Portland, 33 F.3d 1200, 1209 (9th Cir.1994) ("Courts have . . . held that the existence of a statute or ordinance authorizing particular conduct is a factor which militates in favor of the conclusion that a reasonable official would find that conduct constitutional").  Such holding also contradicts the law of other circuits, which hold that in the absence of Supreme Court or (Ninth) circuit precedent to direct an officer's conduct, it is objectively reasonable for the officers to rely on presumptively constitutional state law. See e.g., Cope v. Heltsley, 128 F.3d 452, 460 (6th Cir.1997).

6.    The Court has now joined its sister circuits in holding that when reviewing civil jury instructions for plain error, it must consider, as it does in the criminal context, whether there was an error, whether the error was obvious, and whether the error affected substantial rights.  Although the Court joined its sister circuits and applied plain error review, it did so in a manner that is inconsistent with other circuits' application of such review to jury instructions.  More specifically, the question is not whether the judge provided *a* correct statement of law within the supplemental instructions, but rather, whether the instructions, *when taken as a whole*, fairly and adequately submitted issues to the jury.  See e.g., Niemiec v. Union Pac. R.R. Co., 449 F.3d 854, 858 (8th Cir. 2006) (instructions

are to "viewed in their entirety"); <u>Frederic P. Wiedersum Associates v. Nat'l Homes Const. Corp.</u>, 540 F.2d 62, 66 (2d Cir. 1976) ("[I]t is 'fundamental' error to give instructions which are hopelessly confusing . . ."); <u>cf.</u>, <u>Harvey v. Plains Twp. Police Dep't</u>, 635 F.3d 606, 612 (3d Cir. 2011) (An erroneous jury instruction may also be considered non-fundamental when, taking the instructions as a whole, the erroneous instruction is a 'solitary misstatement of law' buried in an otherwise correct legal explanation.")[6]   Additionally, the en banc Court's holding on this issue failed to take into account the Supreme Court's precedent emphasizing the importance of clarity in last minute instructions to a jury.  <u>Bollenbach v. U.S.</u>, 326 U.S. 607, 612-613 ("[T]he judge's last word is apt to be the decisive word," and when that last word concerns "a vital issue and [is] misleading, the error is not cured by a prior unexceptional and unilluminating abstract charge . . .When a [deliberating] jury makes explicit its difficulties, a trial judge should clear them away with concrete accuracy.")

As such, based upon the issues set forth above, while Plaintiff may disagree that a petition for certiorari would be meritorious, he cannot credibly argue that the

---

[6]     It is worthwhile to note that, while the three-judge panel did not expressly state that it was applying plain error review, the panel stated that its review was "limited to whether the verdict form and the protracted unscripted discussions the district judge had with the jurors were so confusing and potentially misleading that defendants are entitled to a new trial," which is consistent with plain error review.  (Dkt. 42-1, at 15).  This conclusion is supported by the fact that the panel cited *Bollenbach v. U.S.*, which applies the plain error standard, in support of its determination regarding the limitation on the panel's review.  (Id.)  In so limiting its review, the three-judge panel unanimously held that, "in more than one way, the district court improperly sent a message to the jurors that they got it wrong the first time."  (Dkt. 42-1, at 16).

petition would be frivolous.

**C.      THE BALANCE OF EQUITIES FAVORS GRANTING A STAY.**

In order to stay proceedings in the District Court, Defendants deposited 125% of the judgment with the Court, in an interest bearing account, in lieu of supersedeas bond, pursuant to Federal Rule of Civil Procedure 62(d).  As such, a delay of 90 days to allow for Defendants to file their Petition for Writ of Certiorari will not prejudice Plaintiff or jeopardize his ability to collect the full amount of damages should the Supreme Court deny Defendants' Petition.  However, if the Court denies Defendants' Motion to Stay the  Mandate, the District Court will release funds to Plaintiff, who will have unfettered discretion and ability to spend the funds as he pleases, despite the fact that such matter has not yet exhausted all appellate remedies.  As such, this Court should grant the stay, as the temporary delay in the release of funds to Plaintiff, particularly where Defendants deposited 125% of the judgment, and the funds are held in the trust of the District Court, will not result in any prejudice or risk to Plaintiff, but the immediate release of such funds absent a stay of this Court's mandate would has the potential of creating substantial harm to Defendants and their ability to recoup such funds, should the Supreme Court grant review and ultimately find in Defendants favor.

Plaintiff has also filed a Motion for Attorneys' Fees and a Cost Bill, which will go forward absent a stay of the Mandate.  The time and resources that will be

required by the parties in opposing and replying to such Motion and Cost Bill is premature in light of Defendants' intent to file a Certiorari Petition with the Supreme Court.

## IV.   <u>CONCLUSION</u>

The answers to the substantial legal questions in this matter have profound implications for the development of immunity standards governing an officers' conduct, generally, and in the context of a school setting, in addition to how plain error review applies when examining last minute supplemental jury instructions, where the jury makes explicit its difficulties.  Furthermore, a stay of the mandate until the Supreme Court disposes of this case poses no risk to Plaintiff, whereas a denial of this request for stay has the potential of creating substantial harm to Defendants.

As such, for the foregoing reasons, Defendants respectfully request that the Court grant this motion, and stay the mandate.

DATED:  November 3, 2014          BORTON PETRINI, LLP.

                                            <u>s/ Stephanie Y. Wu</u>
                                            By: Stephanie Y. Wu, Esq.
                                            *Attorneys for Defendants-Appellants*,
                                            CITY OF SONORA, HAL PROCK, and
                                            MACE McINTOSH

Ninth Circuit Case No.: 11-17454

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on **November 3, 2014.**

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Stephanie Y. Wu
Stephanie Y. Wu